J-S48017-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| NATIONSTAR MORTGAGE, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JEFFREY F. KRATZ | : | |
| | : | |
| Appellant | : | No. 412 EDA 2018 |

Appeal from the Order Entered December 27, 2017
In the Court of Common Pleas of Bucks County Civil Division at No(s):
2009-08837

BEFORE:   DUBOW, J., MURRAY, J., and PLATT*, J.

MEMORANDUM BY MURRAY, J.:                    **FILED SEPTEMBER 06, 2018**

Jeffrey F. Kratz (Appellant) appeals from the order dismissing his counterclaims against Nationstar Mortgage, LLC (Nationstar).[1]  We affirm.

Because we write for the benefit of the trial court and the parties, who are familiar with this case, we set forth an abbreviated summary of the facts and procedural history.  On January 19, 2007, Appellant executed a promissory note in favor of First Magnus Financial Corporation (First Magnus) in the amount of $240,000.  Appellant also executed a mortgage, which named the mortgagee as Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for First Magnus.  Appellant defaulted on the note by

_____

* Retired Senior Judge assigned to the Superior Court.

[1] As we discuss **infra**, the trial court also granted summary judgment in favor of Nationstar.

failing to make payments after April of 2009.

On August 17, 2009, Aurora Loan Services, LLC (Aurora) filed a mortgage foreclosure complaint against Appellant, averring, *inter alia*, that it was the legal owner of the mortgage and it was "in the process of formalizing an assignment." Aurora's Complaint, 8/31/09, at ¶ 3. Two weeks later, on August 31, 2009, MERS recorded a corporate assignment of the mortgage to Aurora. Aurora then filed an amended complaint, attaching a copy of the recorded assignment of mortgage.

On January 29, 2010, Appellant filed a counseled answer, new matter, and counterclaims. He admitted "that on January 19, 2007 [he] made, executed and delivered a Mortgage upon the premises . . . to [MERS] as nominee for [First Magnus]." Appellant's Answer, New Matter & Counterclaim, 1/29/10, at ¶ 3. With respect to Aurora's claim that the mortgage was in default, Appellant further "[a]dmitted . . . that monthly payments of principal and interest may not have been timely paid."[2] *Id.* at ¶ 5. Appellant also

_____

[2] Furthermore, in response to Aurora's claim that $248,815.56 was now due on the mortgage, Appellant stated: "After reasonable investigation [he] is unable to form a belief as to the truth of the averments contained in this paragraph and strict proof thereof is demanded at trial." Appellant's Answer, New Matter & Counterclaim, 1/29/10, at ¶ 6. The trial court found that this general denial constituted an admission, which together with his admissions that he executed the mortgage and failed to make required payments, presented no genuine issue as to any material fact. *See* Trial Court Opinion, 3/19/18, at 11, *citing Wisconson Tr. Co. v. Strausser*, 653 A.2d 688, 692 (Pa. Super. 1995) ("[I]n mortgage foreclosure actions, general denials by mortgagors that they are without information sufficient to form a belief as to

- 2 -

averred that because the corporate assignment of the mortgage to Aurora was not recorded until after Aurora filed the complaint, Aurora lacked standing to bring the suit. Finally, Appellant raised counterclaims that: (1) First Magnus failed to disclose "that there would be a Pricing Premium . . . because this was a 'no doc' Mortgage;"[3] (2) First Magnus engaged in predatory lending "by knowingly putting [him] into an unaffordable Mortgage Loan;" and (3) "[a]fter the Loan became delinquent, [First Magnus] engaged in Bad Faith Business Practices [by] leading [him] to believe that [it] would work with [him] in order to resolve [his] delinquency." *Id.* at ¶¶ 20, 24, 26.

In February of 2013, Aurora assigned the mortgage to Nationstar. Nationstar was substituted as the plaintiff in this matter. On March 23, 2017, Nationstar filed a motion for summary judgment, averring that Appellant either admitted or was deemed to have admitted the essential elements of its mortgage foreclosure action, and thus there were no material issues of fact in dispute. Appellant filed a response, attaching "an alleged 'expert report' purporting to identify . . . deficiencies with the Mortgage's assignments." Trial Court Opinion, 3/19/18, at 3. The trial court heard oral argument on October 24, 2017, and on October 26th, granted Nationstar's motion for summary

---

the truth of averments as to the principal and interest owing must be considered an admission of those facts.").

[3] "A 'no doc' mortgage is a mortgage loan where the borrower is not required to provide documentation with respect to income and other financial assets." Trial Court Opinion, 3/19/18, at 2 n.2.

judgment.

Appellant appealed, but this Court stated that it was unclear whether his counter-claims were outstanding and thus issued a rule to show cause why the appeal should be not quashed as taken from a non-final order. On December 27, 2017, the trial court issued the underlying order formally dismissing Appellant's counterclaims. Nevertheless, this Court quashed the appeal on January 12, 2018, without prejudice to Appellant to file a notice of appeal from the December 27th order. *See Nationstar Mortgage, LLC v. Kratz*, 3893 EDA 2017 (Pa. Super. Jan. 26, 2018) (order denying Appellant's motion for reconsideration of this Court's quashal order). Appellant then filed a notice of appeal on January 29, 2018. Both the trial court and Appellant have complied with Pa.R.A.P. 1925.[4]

Appellant presents the following issues for our review:

[1.] Are there genuine issues of material fact as to [Nationstar's] standing to bring a mortgage foreclosure action against Appellant?

[2.] Has [Nationstar] failed to satisfy its burden of proof for summary judgment by submitting only an affidavit regarding the chain of ownership of the mortgage and note from the original mortgagor and original note holder *via* an affidavit?

[3.] Did [the trial court] err by dismissing Appellant's

---

[4] Appellant's Rule 1925(b) statement was 3 pages long and raised at least 10 issues. We remind Appellant's counsel that a Rule 1925(b) statement "shall concisely identify each ruling or error" and "should not be redundant or provide lengthy explanations as to any error." *See* Pa.R.A.P. 1925(b)(4)(ii), (iv).

counterclaims?

Appellant's Brief at 8.[5]

In his first issue, Appellant avers that Nationstar was not entitled to summary judgment because there was a genuine issue of material fact as to whether Aurora (Nationstar's predecessor in interest) had standing to sue him. Appellant contends that Aurora did not own the mortgage at the time that it filed the complaint, and instead, the mortgage was titled in the name of MERS as a nominee for First Magnus. Next, Appellant asserts that MERS merely tracks the transfers of mortgages through an electronic registry, never owned the mortgage in this case, and thus could not have assigned the mortgage to Aurora. In support, Appellant cites *Montgomery Co. v. MERS Corp., Inc.*, 904 F. Supp. 2d 436 (E.D. Pa. 2012), which he summarizes as a class action by Pennsylvania counties to recover recording fees. Finally, Appellant, citing his expert report, contends that because First Magnus filed for bankruptcy in 2007, it could not have legally assigned the mortgage to Aurora in 2009, and thus he should be permitted to present his expert witness before a jury.

This Court has stated:

---

[5] Although Appellant's statement of questions involved raises three issues, the argument section of his brief sets forth only one issue, with five subheadings. We remind counsel: "The argument shall be divided into as many parts as there are questions to be argued [and shall include] discussion and citation of authorities as are deemed pertinent." *See* Pa.R.A.P. 2119(a). Nevertheless, because Appellant presents some argument in support of the three issues initially raised, we address them.

In reviewing an order granting summary judgment, our scope of review is plenary, and our standard of review is the same as that applied by the trial court. . . . [A]n appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo*.

. . . If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Gerber v. Piergrossi*, 142 A.3d 854, 858 (Pa. Super. 2016) (citation omitted).

In rejecting Appellant's claim that Aurora lacked standing to sue him, the trial court relied on *U.S. Bank v. Mallory*, 982 A.3d 986 (Pa. Super. 2009) (*Mallory*). In that case, the defendant executed a mortgage in favor of MERS as nominee for Mortgage Lenders Network USA, Inc. *Id.* at 989. Subsequently, US Bank N.A. (US Bank) filed a complaint in mortgage foreclosure against the defendant, in which it "averred that it was the legal owner of the mortgage and was in the process of formalizing the assignment thereof." *Id.* The defendant failed to respond, and default judgment was entered against him. *Id.* It appears that the mortgage assignment to US Bank was not executed until after the complaint was filed and not recorded until after default judgment was entered. *See id.* The defendant filed a petition to strike and/or open the default judgment, claiming, *inter alia*, that:

(1) the complaint did not set forth any assignment of the mortgage, as required by Pa.R.Civ.P. 1147(a)(1);[6] and (2) it was improper under Pa.R.Civ.P. 1019(i) for US Bank "to merely assert it was the owner of the mortgage and was 'in the process of formalizing assignment of same."[7]  *Id.* The trial court denied relief.  *Id.* at 991.

On appeal to this Court, the defendant presented the same arguments, as well as a claim that US Bank "did not have standing to file a complaint in mortgage foreclosure [because it] was required to have executed and recorded a written assignment from MERS."  *Id.* at 993.  This Court disagreed, holding that: US Bank's complaint sufficiently put the defendant on notice of its claim of interest with regard to the mortgage; US Bank's "averment that it was in the process of formalizing the assignment sufficiently explained why, under Pa.R.C.P. 1019, a copy of the written assignment was not attached to the complaint;" and "that Pa.R.C.P. 1147(a)(1) does not require that a party have a recorded assignment as a prerequisite to filing a complaint in mortgage foreclosure."  *Id.* at 993.

In finding Nationstar had standing to initiate the instant foreclosure

---

[6] **See** Pa.R.Civ.P. 1147(a)(1) ("The plaintiff shall set forth in the complaint . . . the parties to and the date of the mortgage, and of any assignments, and a statement of the place of record of the mortgage and assignments[.]").

[7] **See** Pa.R.Civ.P. 1019(i) ("When any claim . . . is based upon a writing, the pleader shall attach a copy of the writing . . . , but if the writing or copy is not accessible to the pleader, it is sufficient so to state, together with the reason, and to set forth the substance in writing.").

proceedings, the trial court cited **Mallory**'s holding that the recording of a mortgage assignment is not required for a mortgage assignee to file a complaint, nor does the lack of a mortgage assignment preclude an assignee from seeking enforcement of the mortgage through foreclosure.  Trial Court Opinion, 3/19/18, at 13.  On appeal, Appellant wholly fails to address this analysis by the trial court; instead, he merely reiterates the claims already presented and rejected below.  Upon review, we find that the trial court's reliance on **Mallory** was proper, and no relief is due on Appellant's standing claim.

Furthermore, Appellant has not presented any persuasive argument as to why, under **Montgomery Co.**, the trial court should have found that MERS could not assign the mortgage to Aurora.  Appellant's full discussion of **Montgomery Co.** is:

> In 2011, the legality of MERS was directly challenged by the Montgomery County Recorder of Deeds who filed a Class Action Suit on behalf of all Pennsylvania Counties seeking to recover the recording fees that would have been paid had each of the mortgage transfers supposedly lodged in the MERS system been filed in the official county registries.  **Montgomery County v. MERS Corp., Inc.**, 904 F. Supp. 2d 436 (E.D. Pa. 2012).

Appellant's Brief at 18.  Appellant does not explain the federal court's conclusion nor, significantly, any relevance that a lawsuit concerning recording fees would have to this case.  In any event, this Court has upheld MERS' authority to complete a sheriff's sale where the mortgage provided that MERS "is the mortgagee and is acting 'as a nominee for Lender and Lender's

successors and assigns,'" and that:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

***Mortgage Electronic Registration Systems, Inc. v. Ralich***, 982 A.2d 77, 81 (Pa. Super. 2009) (emphasis removed). Here, the mortgage includes verbatim clauses. Thus, Appellant's claim that MERS lacked authority to exercise any of the interests vested in First Magnus is meritless. ***See id.***; Mortgage, 1/19/07, at 3, Exhibit A to Aurora's Complaint, 10/13/09.

Finally, we consider Appellant's claim that First Magnus could not have assigned the mortgage to Aurora while First Magnus was in bankruptcy. We note that Appellant does not dispute the trial court's finding that he lacked standing to challenge the assignments of the mortgage — the court reasoned that Appellant was neither a party to nor a third-party beneficiary of the assignment contracts. ***See*** Trial Court Opinion, 3/19/18, at 12. ***See also JP Morgan Chase Bank, N.A. v. Murray***, 63 A.3d 1258, 1263 (Pa. Super. 2013) ("***JP Morgan***") (in a contract action, "the complainant, to establish standing, must plead and prove its right to sue under that instrument," and "[w]hen suit is brought against the defendant by a stranger to his contract, [the defendant] is entitled to proof that the plaintiff is the owner of the claim against him."). In the absence of any argument that he in fact did have standing to challenge

the assignments, no relief is due on Appellant's claim. *See Coward v. Owens-Corning Fiberglas Corp.*, 729 A.2d 614, 626 (Pa. Super. 1999) ("[F]ailure to posit a properly developed argument on this point effectively waives the issue for purposes of appellate review.").

In Appellant's second issue, he reiterates that he may challenge Nationstar's standing to bring this action in foreclosure. Appellant's Brief at 19. His discussion then focuses on Nationstar's alleged failure to provide proof that it possessed the mortgage. Appellant claims that the original note has not been entered into evidence nor examined by him, the copy of the note attached to the complaint "is not conclusive evidence," and the "only evidence which [Nationstar] has presented regarding the ownership of the note is a bald allegation in [an affidavit by a Nationstar employee] that 'Nationstar is currently in Possession of the Note.'" Appellant's Brief at 20-21, *citing JP Morgan*, 63 A.3d 1258 (reversing summary judgment "upon finding the parties disagreed as to whether [the mortgagee] produced for [the mortgagor's] inspection the Original Note and whether the [document which purported to endorse the original note in blank] was itself an original").

Here, in granting summary judgment in favor of Nationstar, the trial court reasoned: "Appellant, through his responses in his Answer and elsewhere in the record, admits that he executed a Mortgage on the Property." Trial Court Opinion, 3/19/18, at 15. This finding is confirmed by the record. *See* Appellant's Answer, New Matter & Counterclaim, 1/29/10, at ¶ 3.

Appellant disregards that he admitted to executing, as well as defaulting on, the original note. Thus, any present challenge to the authenticity of the note is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). With respect to the alleged invalidity of the various assignments of the mortgage, we reiterate that Appellant does not dispute the trial court's finding that he lacked standing to challenge the assignments. Accordingly, no relief is due.

In Appellant's final issue, he avers that his counterclaims should not have been dismissed. First, he reiterates that First Magnus did not disclose to him that the mortgage was a "no doc" mortgage and had a pricing premium. He disputes the trial court's finding that the "Notice of Loan Approval" document demonstrated that he was required to provide income and asset information — Appellant argues, in sum: "A close inspection, however, of the 'notice of Loan Approval' indicates that there was no verification of [his] income or assets nor were they ever requested. This is conclusive evidence that the mortgage from First Magnus was a 'no doc' mortgage which is not allowed." Appellant's Brief at 24. Next, Appellant asserts that the trial court did not indicate what parts of the record it relied on in finding there was no evidence that Nationstar or its predecessors in interest engaged in predatory lending or any wrongful behavior. Appellant maintains that he was unaware that the mortgage was unaffordable. Finally, Appellant alleges that his counterclaim against Aurora for bad faith business practices was proper

because it stemmed from the creation of the mortgage.

Aside from a reference to the trial court's statement, "that 'Counterclaims in a Mortgage Foreclosure Action are only permissible if they arise from the same transaction from which the Plaintiff's cause of action arose," Appellant has not provided citation to or discussion of legal authority to support any of his claims, each of which involve multiple issues of law. **See** Appellant's Brief at 25. Accordingly, he has waived his challenge to the dismissal of his counterclaims. **See Harris v. Toys "R" Us-Penn, Inc.**, 880 A.2d 1270, 1279 (Pa. Super. 2005) ("[F]ailure to develop an argument with citation to, and analysis of, relevant authority waives that issue on review.").

Furthermore, we note that even if the issues were not waived, Appellant would be not be entitled to relief. The trial court rejected Appellant's claim that the mortgage was a "no doc" mortgage, citing the "Notice of Loan Approval," which made "clear that Appellant provided to First Magnus numerous financial documents evidencing [his] financial circumstances prior to settlement of the Mortgage." Trial Court Opinion, 3/19/18, at 6-7. This document would support the trial court's finding that First Magnus was satisfied that Appellant had provided, *inter alia*, "all pages of most recent 2 mo bk stmts [sic]" and "a satisfactory payment history from PNC [for another loan]." Notice of Loan Approval, 1/17/07, at 1-2.

In addition, the trial court correctly observed that in Pennsylvania, there is no common law cause of action for "predatory lending" — a statement which

Appellant does not dispute on appeal. *See Schnell v. Bank of New York Mellon*, 828 F.Supp.2d 798, 803 n.3 (E.D. Pa. 2011) (Pennsylvania does not recognize predatory lending as independent cause of action, and instead, any claim for relief for predatory lending practices must be supported by some statutory basis). Nevertheless, the trial court noted that a private cause of action may be brought under the Unfair Trade Practices and Consumer Protection Law (UTPCPL), by showing that the plaintiff "justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." Trial Court Opinion, 3/19/18, at 8, *citing Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425 (Pa. 2004). The court found that here: "The record makes clear that incident to the creation of the Mortgage, First Magnus provided Appellant with all the requisite information [he] needed to fully comprehend the terms of the agreement," "Appellant does not allege he was an unsophisticated first time mortgagor," "Appellant had ample opportunity to read, review, and contemplate the terms of the loan," and "Appellant voluntarily agreed to [the terms] by virtue of his signature on the Mortgage." Trial Court Opinion, 3/19/18, at 8.

Finally, with respect to Appellant's counterclaim that Aurora engaged in bad faith business practices by misleading him after he defaulted on the mortgage, the trial court reasoned, "if a defendant raises counterclaims that arose once the mortgage was in default, and said counterclaims do not relate to part of, or incident to, the creation of the mortgage, said counterclaims

may be struck." ***Id.*** at 9, ***quoting Mellon Bank, N.A. v. Joseph***, 406 A.2d 1055, 1060 (Pa. Super. 1979). Again, Appellant does not address the court's reasoning, which is supported by both the record and case law. His general claim that Aurora's post-default conduct pertained to the creation of the mortgage – in the absence of waiver – would be meritless.

For the foregoing reasons, no relief is due. We therefore affirm the trial court's order dismissing Appellant's counterclaims.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/6/18

Circulated 08/17/2018 10:52 AM

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CIVIL COURT DIVISION

NATIONSTAR MORTGAGE, LLC
   *Appellee*
  v.           No. 09-08837

JEFFREY F. KRATZ
   *Appellant*

Case #: 2009-08837-0099  11852639
Main (Public)
Code: 5214  Judge:29
Rcpt: Z1953981 3/19/2018 8:47:31 AM

## OPINION

Appellant, Jeffrey F. Kratz (hereinafter, "Appellant"), has filed an appeal to the Superior Court of Pennsylvania from this Court's December 27, 2017 Order (hereinafter "the December Order" or the "December 27, 2017 Order"), which denied and dismissed the counterclaim in the above-captioned matter. This Opinion is filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).

## FACTUAL BACKGROUND

On January 19, 2007, Appellant executed a Promissory Note ("Note") in favor of First Magnus Financial Corporation ("First Magnus") and a Mortgage (hereinafter, the "Mortgage") with Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for the lender First Magnus, its successors and assigns.[1] The Note was in the principal sum of $240,000.00, this sum being payable in equal, consecutive, monthly installments of principal and interest to facilitate the purchase of the property located at 3 South Main Street, Richlandtown, PA 18955 (hereinafter, the "Property"). Appellant thereafter defaulted on the Mortgage and Note by failing to make payments from April 1, 2009 to the present.

On August 31, 2009, MERS assigned the Mortgage to Aurora Loan Services, LLC (hereinafter, "Aurora"). Aurora thereafter assigned the Mortgage to Nationstar Mortgage, LLC

---

[1] The factual background in this matter is gleaned from the parties' respective pleadings.



(hereinafter, "Appellee"), on February 5, 2013. All assignments were duly recorded. After a Complaint was filed and once Appellee was assigned the Mortgage, Appellee substituted itself for Aurora in the instant case. Pursuant to its assignment of the Mortgage, Aurora also transferred possession of the Note, endorsed in blank by First Magnus, to Appellee. As a consequence of Appellant's default, on June 4, 2009, Aurora mailed Appellant notice of its intention to foreclose on the Property. Appellant, however, failed to cure the default and Appellee thereafter initiated foreclosure proceedings.

## PROCEDURAL BACKGROUND

On August 17, 2009, Aurora filed a Complaint against Appellant. On August 31, 2009, the assignment of the Mortgage between MERS and Aurora was recorded. On September 23, 2009, Appellant filed Preliminary Objections to the Complaint. In response to Appellant's Preliminary Objections, on October 13, 2009, Aurora filed an Amended Complaint to which Appellant also filed Preliminary Objections. By Order dated January 12, 2010, we overruled Appellant's Preliminary Objections and ordered Appellant to file an answer to the Amended Complaint. On January 29, 2010, Appellant complied with our January 12, 2010 Order and filed his Answer along with New Matter and a Counterclaim.

In his Counterclaim, Appellant alleges *inter alia* that First Magnus failed to disclose that the Mortgage in question was a "no doc" mortgage[2], that Appellee and/or Appellee's predecessors in interest to the Mortgage engaged in predatory lending behavior by knowingly permitting Appellant to take on financing they knew Appellant could not afford, and finally that Aurora engaged in bad faith business practices by failing to modify the Mortgage's terms after Appellant defaulted. On July 2, 2010, Aurora filed Preliminary Objections to Appellant's Counterclaim. By

---

[2] A "no doc" mortgage is a mortgage loan where the borrower is not required to provide documentation with respect to income and other financial assets. Plaintiff's Brief In Support of its Motion for Summary Judgment at 18.

2

Order dated September 29, 2010, we overruled said Preliminary Objections. The parties thereafter engaged in discovery. On February 5, 2013, Aurora assigned the Mortgage to Appellee and Appellee thereafter substituted itself for Aurora in the instant case.

On March 23, 2017, Appellee filed a Motion for Summary Judgment seeking an *in rem* judgment. In his response to said motion, Appellant attached an alleged "expert report" purporting to identify certain deficiencies with the Mortgage's assignments. On October 24, 2017, we held oral argument pursuant to Appellee's Motion for Summary Judgment. After oral argument was held, by Order dated October 26, 2017, we granted Appellee's Motion for Summary Judgment from which an appeal followed.

On November 27, 2017, Appellant filed a Notice of Appeal from our October 26, 2017 Order (hereinafter, the "October Order") granting summary judgment in favor of Appellee. In granting summary judgment, we intended our ruling to apply to any outstanding counterclaims as Appellee's Motion for Summary Judgment requested the dismissal of Appellant's Counterclaim. On December 1, 2017, Appellant filed a Concise Statement of Matters Complained of on Appeal (hereinafter "Concise Statement" or "Rule 1925(b) Statement"). On December 20, 2017, the Superior Court of Pennsylvania issued a Rule to Show Cause why the Appeal should not be Quashed because the outstanding counterclaims had not been specifically addressed. On December 27, 2017, seeking to put the case in a posture ripe for a final disposition on its merits, we issued an Order which denied and dismissed the Appellant's outstanding counterclaim(s). In this Order we also clarified that in granting summary judgment in favor of Appellee, we intended to dismiss any of Appellant's remaining counterclaim(s).

On January 2, 2018, Appellant responded to the Superior Court's Rule to Show Cause. On January 12, 2018, the Superior Court issued an Order quashing Appellant's appeal from the

3

October Order because the Superior Court indicated that the October Order was not final and appealable. On January 19, 2018, Appellant filed a Motion for Reconsideration of the Superior Court's January 12, 2018 Order. On January 26, 2018, the Superior Court denied Appellant's Motion for Reconsideration without prejudice as to Appellant's rights to file a notice of appeal from this Court's December 27, 2017 Order.[3]

On January 29, 2018, Appellant filed his Notice of Appeal from our December 27, 2017 Order. On February 23, 2018, Appellant filed his Concise Statement wherein Appellant asserts the following allegations of error, which we set forth *verbatim*, as follows:

1. Judge Fritsch's Order provides no reason why he granted Plaintiffs Motion for Judgment on the Pleadings [sic].[4] A copy of Judge Fritsch's Order is attached hereto as Exhibit A.

2. In order for a party to prevail on a Motion for Judgment on the Pleadings the party must show there is no genuine issue as to any material fact and that the Moving Party is entitled to a Judgment as a matter of law. Pennsylvania Rule of Civil Procedure 1034. Herein Defendant in his Answer to Plaintiff's Complaint and New Matter and Counterclaim has raised numerous Issues of material fact, including Plaintiffs Standing to bring the within Complaint.

3. In a Motion for Judgment on the Pleadings the Court is limited to construing only the Pleadings and any relevant documents properly attached to the Pleadings.

4. The Original Note has not been attached to the Complaint. Defendant has raised the issue of Standing in his Answer to the Complaint and New Matter. In order for the Plaintiff to have Standing, the Plaintiff must be the Holder and Owner of the Note at the time Plaintiff's Complaint is filed. There is

---

[3] We believe that the Pennsylvania Superior Court referred to our December 27, 2017 Order whereby we dismissed any of Appellant's outstanding counterclaims as this Court's "December 28, 2017 [O]rder."

[4] Throughout his Concise Statement, Appellant misidentifies our October 26, 2017 Order as one where this Court granted a Motion for Judgment on the Pleadings. Our October 26, 2017 Order, however, granted summary judgment in favor of Appellee.

4

no evidence that the Plaintiff was the Holder or Owner of the Note at the time the Complaint was filed.

5. Defendant has challenged the transfer of the Note from the Original Holder to the alleged present Holder of the Note.

6. Each transfer and assignment of the Note from the Original Holder was deficient in some manner and Defendant has filed an Expert Report outlining each and every deficiency of the Plaintiff. Defendant's Expert Report was attached to Defendant's Answer to Plaintiff's Motion for Judgment on the Pleadings. Other than a self-serving affidavit Plaintiff has produced no evidence as the Owner or Holder of the note.

7. Plaintiff relies on an "Affidavit in Support of Plaintiff's Motion for Judgment on the Pleadings allegedly executed by Fay Janati." An uncontradicted Affidavit of the Moving Party or its witness will not support a grant of Judgment on the Pleadings.

8. The Honorable C. Theodore Fritsch, Jr., erred by granting Plaintiff's Motion for Judgment on the Pleadings when Plaintiff produced no evidence that it is the proper Holder or Owner of the Note.

9. The Honorable C. Theodore Fritsch, Jr., erred in determining that the Plaintiff has Standing to pursue the within action.

10. The Honorable C. Theodore Fritsch, Jr., erred in dismissing Defendant's Counterclaim based upon no evidence being submitted with the exception of Plaintiff's Answer to Defendant's Counterclaim.

11. A mere Denial by Plaintiff of the issues plead in Defendant's Counterclaim is not sufficient to allow Counterclaim Defendant (Nationstar Mortgage LLC) to be entitled to Judgment as a matter of law. See Pennsylvania Rule of Civil Procedure 1034.

12. The Honorable C. Theodore Fritsch, Jr.'s Opinion has not addressed any of the issues raised by Counterclaim Plaintiff (Jeffrey F. Kratz) in his Counterclaim.

We address Appellant's contentions below.

5

## DISCUSSION

Due to the fact that our October Order granting summary judgment in favor of Appellee was intended to dismiss any pending counterclaims, we address herein both the dismissal of Appellant's Counterclaim and the reasons for our granting of Appellee's Motion for Summary Judgment.

### Appellant's Counterclaim

Appellant alleges that this Court erred in dismissing his Counterclaim raised in the context of his Answer to Appellee's Complaint.[5] The primary contentions that Appellant advances in his Counterclaim are the following: (1) First Magnus did not disclose to Appellant that there was a pricing premium because the Mortgage in question was a "no doc" mortgage, (2) Appellee and/or Appellee's predecessors in interest to the Mortgage engaged in predatory lending behavior by knowingly permitting Appellant to take on financing they knew Appellant could not afford, and (3) Aurora engaged in bad faith business practices by failing to modify the Mortgage's terms after Appellant defaulted. We shall address each of Appellant's contentions separately below.

### The "No Doc" Mortgage contention

Appellant asserts that the Appellee violated its fiduciary duty to Appellant by failing to disclose a pricing premium in the context of a "no doc" mortgage. Contrary to Defendant's assertion, the record indicates that the loan Appellant obtained from First Magnus was not a "no doc" mortgage and therefore Appellant's contention is based upon a false premise. As a prerequisite to his obtaining financing from First Magnus, Appellant was required to provide First Magnus with specific income and asset information. A list of the information Appellant provided

---

[5]Appellant's Counterclaim is broad, conclusory, and all-encompassing. We therefore summarize Appellant's contentions into more specific categories.

6

to First Magnus was evidenced by the document entitled "Notice of Loan Approval." Plaintiff's Brief In Support of its Motion for Summary Judgment at 97. This list included, *inter alia*, an operating income statement, bank statements, and Appellant's prior payment history from a different loan obtained with PNC Bank. Moreover, Appellant was provided with a HUD-1 Settlement Statement and Federal Truth-In-Lending Disclosure Statement (hereinafter, "HUD form"), which detailed the material terms of the Mortgage including its costs and settlement terms. The facts in the record make clear that Appellant provided to First Magnus numerous financial documents evidencing Appellant's financial circumstances prior to settlement of the Mortgage. Moreover, all material terms of the Mortgage, including costs and settlement terms were provided to Appellant. Thus, Appellant cannot now claim that the Mortgage he voluntarily entered into with First Magnus was a "no doc" mortgage and that he did not know of an alleged pricing premium. There is also no apparent authority to indicate that Appellee, as a mortgagee, has a fiduciary duty to disclose a pricing premium to a mortgagor beyond the material terms set forth in the loan agreement. Accordingly, we believe Appellant's contention with respect to the Mortgage being characterized as a "no doc" mortgage is meritless.

Predatory Lending

Appellant next argues that Appellee engaged in predatory lending by intentionally placing him into an unaffordable mortgage loan within three years of a previous mortgage. Appellant asserts that Appellee was aware of his financial circumstances on the property and that the income derived from the property alone would not be enough to sustain his mortgage payments. Accordingly, Appellant concludes that Appellee violated the Pennsylvania Unfair Trade Practices and Consumer Protection law.[6] We find Appellant's contentions are without merit.

---

[6] 73 Pa. Stat. Ann. § 201-1 *et seq.*

7

Under Pennsylvania law, to bring a private cause of action under the Unfair Trade Practices and Consumer Protection Law (UTPCPL), a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance. Yocca v. Pittsburgh Steelers Sports, Inc., 578 Pa. 479, 854 A.2d 425 (2004). There is no common law cause of action for "predatory lending" under Pennsylvania law. Any claim for relief for predatory lending must be supported by some statutory basis. In re McConnell, 390 B.R. 170 (Bankr. W.D. Pa. 2008). Moreover, absent fraud in the inducement, a written contract entered into after opportunity for inspection will not be voided and should be enforced according to its terms even if the party signing the document failed to read and review its terms. Schoble v. Schoble, 349 Pa. 408, 37 A.2d 604, 605 (Pa. 1944).

Beyond the mere conclusory allegations contained in his Counterclaim, there is not a scintilla of evidence that Appellee or Appellee's predecessors-in-interest engaged in any wrongful or deceptive behavior. The record makes clear that incident to the creation of the Mortgage, First Magnus provided Appellant with all the requisite information Appellant needed to fully comprehend the terms of the agreement. Moreover, Appellant does not allege he was an unsophisticated first time mortgagor. The facts in the record do not indicate that Appellee or Appellee's predecessors-in-interest misled Appellant or concealed any information from him. Appellant had ample opportunity to read, review, and contemplate the terms of the loan. All material terms of the Mortgage were disclosed to Appellant which Appellant voluntarily agreed to by virtue of his signature on the Mortgage.

Moreover, Appellant also points to no evidence that the terms of the Mortgage were unlawful, excessive, or predatory in nature beyond the bald and conclusory allegations in his Counterclaim. Appellant does not allege that he was fraudulently induced into entering into the

8

Mortgage. The record makes clear that Appellant's default is solely based upon his own failure to make the monthly payments per the terms of the Note and Mortgage. We therefore reject his attempt to invalidate the Mortgage by now claiming that he did not understand the costs of the loan. Accordingly, Appellant's claim that Appellee and/or its predecessors-in-interest engaged in predatory lending is meritless.

Bad Faith Business Practice

Finally, Appellant asserts certain bad faith business practices pursuant to Aurora's failure to modify the loan. We reject Appellant's argument for the reasons set forth below.

Counterclaims in a mortgage foreclosure action are only permissible if they arise from the same transaction from which the plaintiff's cause of action arose. Green Tree Consumer Disc. Co. v. Newton, 2006 PA Super 284, 909 A.2d 811 (2006) (*citing* Pa.R.C.P. No. 1148). The rule governing counterclaims in mortgage foreclosure actions is interpreted narrowly. Nicholas v. Hofmann, 2017 PA Super 77, 158 A.3d 675, 697 (2017). Thus, permissible counterclaims in mortgage foreclosure actions are only those which relate to part of or incident to the creation of the mortgage relationship itself. Id. Thus if a defendant raises counterclaims that arose once the mortgage was in default, and said counterclaims do not relate to part of, or incident to, the creation of the mortgage, said counterclaims may be struck. Mellon Bank, N.A. v. Joseph, 267 Pa. Super. 307, 406 A.2d 1055 (1979).

In the instant case, Appellant admits that the contentions with respect to bad faith business practice are based upon Aurora's failure to modify the loan after he was already in default. This allegation, therefore, does not pertain to the creation of the Mortgage itself but rather involves Aurora's potential mitigation of damages stemming from Appellant's default. Accordingly, we

9

dismissed Appellant's Counterclaim with respect to bad faith business practices as it is inappropriate in an *in rem* mortgage foreclosure proceeding.

## Appellee's Motion for Summary Judgment

Having discussed our reasons for the dismissal of Appellant's Counterclaim, our analysis next turns to our decision to grant Appellee's Motion for Summary Judgment. We believe it is appropriate to discuss our decision with respect to granting Appellee's Motion for Summary Judgment because in said motion Appellee sought the dismissal of any outstanding counterclaims. We therefore briefly address the merits of granting summary judgment in favor of Appellee. For ease of discussion we distill this section into three subparts: (1) Appellant's admissions, (2) the assignments of the Mortgage, and (3) the appropriateness of summary judgment in the instant case.

### Appellant's Admissions

Under Pennsylvania law, the averments in a pleading to which a responsive pleading is required are deemed admitted when not specifically denied. A general denial or a demand for proof shall have the effect of an admission. Pa.R.C.P. No. 1029(b). In determining whether a defendant has admitted the material allegation in a complaint, the Court should examine pleadings as a whole. Cercone v. Cercone, 254 Pa. Super. 381, 386 A.2d 1 (1978). Even if the defendant's responses in an answer to a complaint appear to be ineffective denials when viewed in isolation, the court must still evaluate the answer in its entirety to determine if the pleading, as a whole, supports the conclusion that the defendant's responses are effectively admissions. Dusman v. Bd. of Directors of Chambersburg Area Sch. Dist., 113 A.3d 362 (Pa. Commw. Ct. 2015).

When a party clearly must know whether allegations in a complaint are true, a statement that after reasonable investigation a party is without knowledge or information sufficient to form a belief as to the truth of the averment, does not excuse a party's failure to deny or admit factual

10

allegations. Cercone v. Cercone, 254 Pa. Super. 381. In the mortgage foreclosure context, the Pennsylvania Superior Court has held that a mortgagor's general denial of a mortgagee's averment regarding the total amount due under the mortgage constitutes an admission to those facts. First Wisconsin Tr. Co. v. Strausser, 439 Pa. Super. 192, 653 A.2d 688 (1995) (*citing* Pa.R.C.P. No. 1029).

In the instant case, Appellant's Answer to the Amended Complaint amounts to nothing more than either explicit admissions or general denials. Appellant admits that he executed a Mortgage and delivered a Mortgage for the Property to MERS as nominee for First Magnus. Appellant admits that Aurora complied with the appropriate mortgage foreclosure notice requirements. In his Answer, Appellant purports to dispute the total amount due under the mortgage by generally denying paragraph six of the Amended Complaint. Appellant's contention, however, constitutes an admission as Appellant does not provide any factual basis to indicate that the amount due under the Mortgage is erroneous. Appellant neither explicitly indicates which part of the total amount due was incorrectly calculated nor does Appellant aver specific facts which he believes to be the correct amount. In his Answer, Appellant merely indicates that after reasonable investigation he is unable to form a belief as to the truth of the total amount due pursuant to the Mortgage. Applying Cercone, we therefore determine that Appellant's general denial with respect to the total amount due pursuant to the Mortgage constitutes an admission to that fact.

Finally, Appellant claims that monthly payments of principal and interest "may not" have been timely paid. Appellant's Answer at ¶ 5. Per Cercone, Appellant as the mortgagor, must know whether or not he made payments. The allegation that payments "may not" have been paid is asserted without any specificity. We therefore believe that such a response operates as a general

11

denial and is effectively an admission that Appellant has failed to fulfill his payment obligations pursuant to the Mortgage.

Accordingly, in granting summary judgment, we found that Appellant admitted he executed the Mortgage on the Property, Appellant failed to fulfill his payment obligations, and the Mortgage was in default.

## The Assignment of the Mortgage

Having established the operative facts in the instant matter, our analysis next focuses upon whether Appellant has standing to challenge the Mortgage's assignments. We believe he does not.

Our Supreme Court has determined that an "assignment" constitutes a transfer of property or a right from one person to another. An assignment effectively extinguishes the assignor's right to performance by the obligor and transfers that right to the assignee. Crawford Cent. Sch. Dist. v. Commonwealth., 585 Pa. 131, 888 A.2d 616 (2005). The assignee receives no greater rights than those possessed by the assignor. Moreover, an assignee's rights are not inferior to those of the assignor. Ultimately, an assignee stands in the shoes of the assignor. Id.

In the instant case, Appellant does not have standing to challenge the Mortgage's assignments. Appellant attempts to argue that the Mortgage's assignment to Appellee is defective and as a result, Appellee is not the mortgagee. In support of his contention, Appellant relies on a purported "expert report" highlighting certain alleged deficiencies in the assignment's recording. We reject Appellant's contention. Nothing in the record indicates any basis to invalidate the assignment contracts entered into between First Magnus and First Magnus' successors-in-interest. Appellant is neither a party to the assignment contracts nor is Appellant a third-party beneficiary of the contracts between First Magnus, Aurora, or Appellee. Moreover, Appellant has not indicated any irreparable harm or any imminent injury Appellant would suffer as a result of the

12

assignments. We therefore believe Appellant's challenge to the assignments of the Mortgage is misplaced and should be denied.

Furthermore, in the mortgage foreclosure context, the recording of an assignment neither operates as a prerequisite for an assignee to be able to file a complaint nor does it preclude an assignee from seeking enforcement of the mortgage through foreclosure. US Bank N.A. v. Mallory, 2009 Pa. Super. 182, 982 A.2d 986 (2009) (*citing* Pa.R.C.P. No. 1147(a)(1)). The Plaintiff in a mortgage foreclosure matter must merely own or hold the note to have the right to make a demand for payment. CitiMortgage, Inc. v. Barbezat, 131 A.3d 65, 69 (Pa. Super. 2016) (*citing* Pa.R.C.P. 1147). "Where an assignment is effective, the assignee stands in the shoes of the assignor and assumes all of his rights." Id. (*citing* Smith v. Cumberland Group, Ltd., 687 A.2d 1167, 1172 (Pa. Super. 1997)). Finally, a party foreclosing on a mortgage can prove standing either by showing that it, (1) originated or was assigned the mortgage, or (2) is the holder of the note specially indorsed to it or indorsed in blank. Gerber v. Piergrossi, 2016 Pa. Super. 130, 142 A.3d 854 (2016), reargument denied (Aug. 18, 2016), appeal denied, 166 A.3d 1215 (Pa. 2017).

The record in this case makes clear that Appellee has standing to foreclose on the Property. Appellee paid for the assignment of the Mortgage and therefore has the same security that the original mortgagee had, namely the Mortgage signed by Appellant and First Magnus. By virtue of its assignment, Appellee acquired the rights conferred by the Mortgage which included the right to foreclose on the Property in the event Appellant defaulted. Accordingly, after evaluating the facts of record, we believe that because Appellant defaulted on the Mortgage, Appellee has standing to initiate the instant foreclosure proceedings.

Summary Judgment

Having discussed the operative facts and determined that Appellee has standing to

13

foreclose on the Property, we next evaluate whether granting summary judgment was appropriate in this case.

Under Pennsylvania Law, after the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law:

> **(1)** Whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or **(2)** if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Pa.R.C.P. 1035.2.

The non-moving party must adduce sufficient evidence on an issue essential to its case and on which it bears the burden of proof such that a jury could return a verdict favorable to the non-moving party. Rauch v. Mike-Mayer, 2001 Pa. Super. 270, 783 A.2d 815 (2001). In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Id. (*citing* Potter v. Herman, 762 A.2d 1116, 1117-18 (Pa.Super.2000)). The party moving for summary judgment may not rely solely upon its own testimonial affidavits or depositions, or those of its witnesses, to establish the non-existence of genuine issues of material fact. Dudley v. USX Corp., 414 Pa. Super. 160, 165, 606 A.2d 916, 918 (1992). See Also Borough of Nanty-Glo v. Am. Sur. Co. of N.Y., 309 Pa. 236, 163 A. 523 (1932).

In the mortgage foreclosure context, an action in mortgage foreclosure is strictly an *in rem* proceeding. New York Guardian Mortg. Corp. v. Dietzel, 362 Pa. Super. 426, 524 A.2d 951 (1987). The purpose of judgment in mortgage foreclosure is solely to effect a judicial sale of a

14

mortgaged property. Id. The entry of summary judgment is proper in a mortgage foreclosure case if the mortgagor admits that the mortgage is in default, that the mortgagor failed to pay interest on the obligation, and that the recorded mortgage is in the specified amount. Summary judgment is appropriate even if the mortgagor has not admitted the total amount of the indebtedness in their pleadings. Cunningham v. McWilliams, 714 A.2d 1054 (Pa. Super. Ct. 1998).

In the instant case, when evaluating the evidence in the light most favorable to Appellant, there are no genuine issues of material fact. Appellant, through his responses in his Answer and elsewhere in the record, admits that he executed a Mortgage on the Property. Appellant further admits that the current Mortgage is in default because of his failure to make payments. Appellee, by virtue of its assignment, effectively holds the Note and Mortgage which includes the right to foreclose in the event of default. This Mortgage and Note were duly recorded and evidence a specific amount due. We therefore believe summary judgment in this case is appropriate because Appellant has essentially admitted that he executed a Mortgage on the Property, the Mortgage is in default because of his failure to make payments, the Mortgage is recorded with a specific amount due, and Appellant has failed to present any facts which would contradict the elements of Appellee's claim.

Moreover, with respect to any affidavits submitted in support of granting a motion for summary judgment, Appellant argues the affidavit submitted in support of Appellee's Motion for Summary Judgment precludes the entry of summary judgment. While the rule elicited in Nanty-Glo v. American Surety Co., 309 Pa. 236, 163 A. 523 (1932), prohibits the entry of summary judgment based upon the moving party's testimonial affidavits, such a rule is not implicated in this case. As our Superior Court has stated, an exception to the Nanty-Glo rule exists, where the moving party supports the motion by using admissions of the opposing party. Bank of

15

Am., N.A. v. Gibson, 2014 Pa. Super. 217, 102 A.3d 462, 466 (2014). Admissions include facts admitted in pleadings. Durkin v. Equine Clinics, Inc., 376 Pa. Super. 557, 546 A.2d 665, 670 (1988). Accordingly, we granted summary judgment on the basis of the facts of record and found that no genuine issue of material fact existed for determination at trial. We therefore decided that Appellee was entitled to summary judgment as a matter of law.

## CONCLUSION

Based upon the foregoing, we suggest that the present appeal should be dismissed.

BY THE COURT:

_3|16|2018_
DATE

C. THEODORE FRITSCH, JR., JUDGE

N.B. It is your responsibility
to notify all interested parties
of the above action.

16

*Nationstar Mortgage, LLC v. Jeffrey F. Kratz*
*Bucks County Court of Common Pleas Civil Division, No. 2009-08837*

Copies to:

Kelli Ann Lee, Esquire
MCGUIRE WOODS LLP
625 Liberty Avenue,
23rd Floor
Pittsburgh, PA 15222
  *Attorney for Appellee*

Gerald M. Barr, Esquire
2239 PA Route 309
First Floor
Orefield, PA 19069
  *Attorney for Appellant*